IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE FLAG CO., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 04 C 7984 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| BILL MAYNARD, STEVE ADAMS, And RONALD THOMAS a/k/a RONALD ROTHSTEIN, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, The Flag Company ("Flag"), filed its first amended complaint[1] under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and § 1962(d), alleging that Bill Maynard, Steve Adams, and Ronald Rothstein[2] conspired to induce Flag to purchase "blast faxing"[3] services through fraudulent interstate wire transmissions. Defendants Maynard and Adams have moved to dismiss Flag's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In addition, defendant Rothstein has joined the 12(b)(6) motion, and has moved to transfer this matter for improper venue pursuant to 28 U.S.C. § 1406. For the reasons discussed below the court concludes that it has personal jurisdiction over defendants Adams and Maynard, but also concludes that this case must be transferred for improper venue.

---

[1] Flag filed this claim as a third party complaint in state court. The third party complaint has been removed to this court.

[2] Ronald Rothstein is also referred to as Ronald Thomas.

[3] "Blast faxing" involves sending large numbers of unsolicited facsimile advertisements to potential consumers.

1

## FACTUAL SUMMARY

On February 5, 2004, Flag alleges that Rothstein, an independent contractor for Protus, arranged for a fax to be sent to Flag, a Georgia corporation, offering Protus's "broadcast faxing" services.[4] Michael Lawrence, the vice president of Flag, then called Rothstein to request the faxing service, to which Rothstein agreed. Rothstein then contacted Protus, a Canadian corporation, regarding the Flag contract.

On March 5, 2004, Adams, the vice president of marketing for Protus, sent an email from Canada to Flag confirming the agreement to provide the blast fax services. This email contained the statement that "Over 90% of users are happy with our service..."[5] Thereafter, Protus sent the blast fax to thousands of businesses in the United States advertising Flag's products.[6] On April 1, 2004, Maynard, Sales Director for Protus Solutions, sent Lawrence an email confirming that the blast campaign had concluded.

As a result of the March 2004, blast fax campaign, Henry Repay brought a class action in Illinois state court against Flag for violating the Telephone Consumer Protection Act (TCPA). Flag removed the class action to this court, but it was remanded on July 2, 2004. Flag then filed a third party complaint against Maynard, Adams, and Rothstein under RICO, which was removed.

---

[4] Rothstein worked for RT, Inc. in New York, and maintains that the fax came from the RT, Inc. office in New York. In addition, Rothstein resides in Oregon, not in California as alleged by Flag.

[5] Flag alleges that three additional emails were sent by Rothstein and Adams on March 5, 2004, March 23, 2004, and March 31, 2004, finalizing the billing for the blast fax services. However, Adams claims that he does not recall these emails and claims that investigations are continuing regarding this matter.

[6] Flag alleges that all three defendants sent this fax; however, Maynard and Adams deny that they personally sent the fax.

## DISCUSSION

### I. PERSONAL JURISDICTION

Although § 1962(d) of the RICO statute does not have extraterritorial application, Fed. R. Civ. P. 4(k)(2) provides a mechanism for federal courts to assume jurisdiction over alien defendants. Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934 (7th Cir. 2000). Rule 4(k)(2) provides: "If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state." Thus, three conditions must be met to satisfy the requirements of Rule 4(k)(2): (1) the plaintiff's claims must be based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must not offend the Constitution or other federal laws. Central States, 230 F.3d at 940; see also United States v. Swiss American Bank, Ltd., 191 F.3d 30, 40-42 (1st Cir. 1999).

The plaintiff bears the burden of proving personal jurisdiction. Central States, 230 F.3d at 939. The court may receive and consider affidavits from both parties when evaluating personal jurisdiction. Interlease Aviation Investors II LLC v Iowa Corp., 262 F.Supp.2d 898, 905 (N.D.Ill. 2003). "Any conflicts in the pleadings and affidavits are to be resolved in the plaintiffs' favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." Id.

3

## A. The Claims are Based on Federal Law.

Defendants allege that Flag has failed to adequately state a claim arising under federal law, and thus has not met the first requirement Rule 4(k)(2). Despite the fact that this court has bifurcated the issue of whether Flag has stated a claim under RICO from the issues of jurisdiction and venue, defendant still maintains that Flag is unable to satisfy the first requirement of Rule 4(k)(2). The defendants contend that Flag's claim is so feeble that it does not even involve a federal question under the holding of Williams v. Aztar Indiana Gaming Comm'n, 351 F.3d 294 (7th Cir. 2003) and Bell v Hood, 327 U.S. 678 (1946). However, the Supreme Court has held that an attempt to plead a federal claim fails only where it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell, 327 U.S. at 682-83.

The court in Williams found the plaintiff's theory was so feeble that it did not arise under federal law because plaintiff's counsel virtually admitted that he lacked a good faith basis for bringing a RICO claim and could not cite to any case law to support the suit. Williams, 351 F.3d at 300. The court concluded that the case was "exactly the type of bootstrapping use of RICO that federal courts abhor." Id. Unlike the plaintiff in Williams, the allegations in the instant case do not appear to have been made in bad faith solely to obtain federal court jurisdiction.

In addition, the complaint in the instant case is not so wholly insubstantial so as to preclude this court from analyzing personal jurisdiction under Rule 4(k)(2). The determination that a claim is "wholly insubstantial" must involve more than the fact that the claim is of "doubtful or questionable merit." Winslow v. Walters, 815 F.2d 1114, 1118 (7th Cir 1987). This inquiry into substantiality has been interpreted extremely narrowly such that a claim is

4

"wholly insubstantial" to deprive a court of jurisdiction "only if prior decisions inescapedly render the claims frivolous." Id. (citations omitted). Unlike the plaintiff in Williams, Flag's claims here do not appear to be completely feeble or implausible on their face, and the defendants have not cited to any case that inescapably renders similar allegations frivolous. Therefore, this court will accept Flag's complaint as "federal" solely for the purposes of jurisdictional analysis under Rule 4(k)(2).[7]

## B. No State Has Personal Jurisdiction Over the Alien Defendants.

According to the pleadings in the instant case, the second requirement of Rule 4(k)(2) is satisfied since the foreign defendants, Adams and Maynard, are "not subject to the jurisdiction of the courts of general jurisdiction of any state." A plaintiff is not required to prove that the defendants are not subject to the jurisdiction of any state. ISI International, Inc. v. Borden Ladner Gervais, LLP, 256 F.3d 548, 552 (7th Cir. 2001). Instead, it is defendant's burden to name another state in which the suit could proceed if he wishes to preclude the use of Rule 4(k)(2). Id. If the defendant does not name another state where the suit could go forward, the second requirement of Rule 4(k)(2) is satisfied. Id. Because defendants in this case have not named another jurisdiction within the United States in which Adams and Maynard are amenable to suit, the second prong of Rule 4(k)(2) is met.

## C. Exercising Jurisdiction is Consistent with the Constitution and the Laws of the United States.

To establish jurisdiction under Rule 4(k)(2) a defendant must have sufficient contacts with the United States as a whole to satisfy the due process requirements of the Fifth

---

[7] This decision does not address defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. As stated above, this issue will be decided by the transferee court.

Amendment. This is the same "minimum contacts" test that the Seventh Circuit applies in all federal question cases. Pyrenee, Ltd. v. Wocom Commodities, Ltd., 984 F. Supp. 1148 (N.D.Ill. 1997). This test is used to ensure that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 316 (1945). In addition, the analysis of this requirement varies depending on whether a forum asserts specific or general jurisdiction. RAR, Inc. v. Turner Diesel, 107 F.3d 1272 (7th Cir. 1997).

In the instant case, Flag has alleged only specific jurisdiction over the defendants. The court can assert specific jurisdiction over a defendant when the cause of action arises out of a defendant's minimum contacts with the forum. Purdue Research Found. v. Sanofi-Synthelabo, 338 F.3d 773, 787 (7th Cir. 2003). These contacts must demonstrate that a defendant purposely availed himself of the privilege of conducting business in the United States such that he should reasonably anticipate being hailed into court there. Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76, 105 S.Ct. 2174 (1985); Central States, 230 F.3d at 943.

In addition to minimum contacts, the court must examine other factors to assure that exercising jurisdiction would be reasonable and not offend "notions of fair play and substantial justice." Burger King, 471 U.S. 462. These factors include the burden on the defendant to litigate in the forum, the forum's interest in settling the dispute, the plaintiff's interest in obtaining convenient and effective relief, the plaintiff's burden to litigate elsewhere, and the interstate judicial system's interest in efficient resolution of disputes. Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 105 (1987). The court must assess each

defendant's contacts with the forum individually. Keeton v. Hustler Magazine, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473 (1984).

### i. Adams and Maynard have sufficient minimum contacts with the United States.

Under Rule 4(k)(2), plaintiff must show that each defendant had minimum contacts with the United States as a whole, that the cause of action relates to these contacts, and that exercising jurisdiction over them would be reasonable. Allegations of participation in a conspiracy may satisfy the minimum contacts test. Textor v. Board of Regents of Northern Illinois University, 711 F.2d 1387, 1392 (7th Cir. 1983).[8] To satisfy the requirements of due process, the plaintiff "must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum." Id. The evidence relating to the conspiracy may be direct or circumstantial. United States v. Hickok, 77 F.3d 992, 1005 (7th Cir. 1996).

*Adams*

Flag has provided reasonable allegations of Adams' participation in an alleged RICO conspiracy to establish minimum contacts with the United States. As the Vice President of Marketing for Protus, Adams was in contact with Rothstein, an independent contractor in

---

[8] In a case involving jurisdiction under Rule 4(e), the Seventh Circuit has held that the analysis in Textor applies to the Illinois long-arm statute only and that there is not an "independent federal 'civil co-conspirator' theory of personal jurisdiction." Davis v. A.J. Electronics, 792 F.2d 74 (7th Cir. 1986). However, this case was decided before the 1993 amendments to Rule 4, and did not involve the application of Rule 4(k)(2).

In addition, Davis was decided before the Illinois long-arm statute was amended to extend to the constitutional limits of due process. Zivitz v. Greenburg, 1999 WL 984397 (N.D.Ill. Oct. 25, 1999). After this extension, multiple decisions in this district have found the conspiracy theory of jurisdiction to comport with due process. Zivitz, 1999 WL 984397, at *6; United Phosphorus, Ltd. v. Angus Chemical Co., 43 F.Supp. 2d 904, 910 (N.D.Ill. 1999); Kohler Co. v. Kohler International, Ltd.,196 F.Supp.2d 690 (N.D.Ill. 2002). This theory has also been upheld by a number of other district courts, and has not yet been declared unconstitutional by any controlling authority. See, In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 25073, *5 (D.D.C. Oct. 30, 2001).

Oregon, regarding the contract with Flag, in the United States. Rothstein informed Adams that Flag wanted to purchase Protus' services. Subsequently, Adams sent an email to Flag's president confirming the agreement on March 5, 2004. Flag alleges that this email knowingly misrepresented that "Over 90% of users are happy with [Protus'] service..." In addition, Flag alleges that Adams sent emails March 5, March 23, and March 31, 2004, finalizing Flag's bill.[9] Although the faxes were sent before these emails, they were still in furtherance of the alleged conspiracy because they helped to assure that Protus would be paid for its services. Therefore, with the knowledge that some of Protus's customers, such as Flag, were in the United States, Adams' telephone and email correspondence in the United States regarding the Flag contract were acts in furtherance of the alleged RICO conspiracy and suffice to show that he purposely availed himself of the laws of the United States.

*Maynard*

Flag has provided reasonable allegations of Maynard's participation in the alleged RICO conspiracy to establish minimum contacts with the United States. On April 1, 2004, Maynard sent an email to Flag confirming that the blast fax campaign had concluded.[10] Defendants argue that since Maynard sent this email after the faxes were sent, his action was not in furtherance of the RICO scheme "to deceive innocent business owners throughout the U.S. to purchase their services and omitting to telling customers that sending unsolicited fax advertisements violates federal law." The fact that the faxes were sent prior to Maynard's email, however, does not automatically preclude the relationship between his contact with the United States and the alleged conspiracy. In the confirmation email he neglected to inform Flag about the liability

---

[9] Adams recalls sending only one email, but claims that the investigation into these allegations is "continuing."

[10] Neither Flag nor defendants have provided the court with a copy of the April 1, 2004, email.

associated with blast faxes, and thus his act could be interpreted to be in furtherance of a conspiracy to deceive.[11] Flag alleges that as Sales Director of Protus, Maynard had knowledge of the illegality of the enterprise, and thus his email was in furtherance of the scheme to assure Flag regarding the services provided. Therefore, Maynard's alleged involvement in the alleged RICO conspiracy suffices to show that he purposely availed himself of the laws of the United States and could have reasonably expected being haled into court here.[12]

### ii. Exercising jurisdiction over defendants Maynard and Adams is reasonable.

The exercise of jurisdiction must comport with notions of fair play and substantial justice under International Shoe. This determination includes: the burden on the defendant to litigate in the forum, the state's interest in settling the dispute, the plaintiff's interest in obtaining convenient and effective relief, the plaintiff's burden to litigate elsewhere, and the interstate judicial system's interest in efficient resolution of disputes. Asahi, 480 U.S. at 105. In the instant case, Flag is a Georgia corporation with an interest in litigating this matter in the United States. The burden on the Canadian defendants to travel to the United States is not so large as to outweigh Flag's interest.

---

[11] Flag alleges that Maynard called Lawrence after the commencement of this suit. In that phone call, Maynard asked, "Did you get the $500 letter or the $1500 letter?" Flag maintains that this statement proves that Maynard knew that blast faxes were a violation of the TCPA. This statement, however, is insufficient to prove jurisdiction because it occurred after the commencement of this suit. United Phosphorus, 43 F.Supp.2d at 910.

[12] While defendants maintain that they were not the individuals who physically sent the faxes, the resolution of this allegation is not necessary for this court to have personal jurisdiction over them. Because Flag alleges that defendants had knowledge of the blast fax campaign, they are still alleged co-conspirators regardless of whether they physically sent the fax or aided the persons who did.

9

### iii. The Fiduciary Shield Doctrine does not apply under Rule 4(k)(2).

In their motion to dismiss, defendants argue that they are protected by the fiduciary-shield doctrine. The Seventh Circuit has held, however, that when analyzing jurisdiction under Rule 4(k)(2), there is no fiduciary-shield doctrine. ISI, 256 F.3d at 553. Therefore, defendants may not rely on this doctrine to avoid personal jurisdiction.

## II. VENUE

Defendant Rothstein has filed a motion to transfer for improper venue pursuant to 28 U.S.C. § 1406. He argues that Oregon is the only proper venue for this suit under both the venue provision of RICO, 18 U.S.C. § 1965, and the federal venue provision, 28 U.S.C. § 1391.

### Venue Under RICO §1965(a)

According to RICO, a civil action may be instituted against any person "in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." §1965(a). While the venue provisions of this section are intended to be more expansive than the general federal venue provisions of 28 U.S.C. § 1391, venue must still be properly asserted as to each defendant, from his own contacts rather than those of a co-defendant. First Financial Leasing Corp. v. Hartge, 671 F.Supp. 538, 542. (N.D.Ill. 1987); Payne v. Marketing Showcase, Inc., 602 F.Supp. 656 (N.D.Ill. 1985). When a defendant challenges venue, it is the plaintiff who has the burden of proving that venue is proper in this district. Id.

Flag has not sufficiently alleged that each defendant meets the requirements set forth under § 1965(a). There is no evidence in Flag's first amended complaint that Rothstein resides, has an agent, or transacts his affairs in Illinois. Therefore, Flag has not met its burden of showing that venue is appropriate under § 1965(a) with respect to each of the defendants.

**Venue Under § 1391**

Where a case involves a federal question, venue is analyzed under 28 U.S.C. §1391(b). Under this section, venue is appropriate in: (1) a district where the defendants reside, if all defendants reside in the same state; (2) a district where the substantial events giving rise to the claim occurred; or (3) "a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." "Venue must be properly laid as to each defendant." Payne, 602 F.Supp. at 658. Under §1391(d), venue for alien defendants is appropriate in any district. Where aliens and non-aliens are joined as defendants, venue for the entire action is proper in any district where it is correct as to non-alien defendant. Japan Gas Lighter Assoc. v. Ronson Corp., 257 F. Supp. 219, 225 (D.N.J. 1966).

Flag mistakenly argues that Illinois is the only proper venue in this case. Flag claims Maynard and Adams are subject to personal jurisdiction only in Illinois because they have not consented to jurisdiction in Georgia or Oregon. This argument is inaccurate. The court premises jurisdiction over Adams and Maynard under Rule 4(k)(2), which allows a plaintiff to bring a claim against a foreign defendant in <u>any</u> district court of the United States, where no one particular district has personal jurisdiction over the defendant. Thus, defendants would be subject to jurisdiction in Georgia or Oregon regardless of their "consent." In addition, given that §1391(d) provides that any venue is appropriate for alien defendants, it is clear that jurisdiction and venue for Maynard and Adams would be proper in any district court.

Given that Maynard and Adams may be sued in any district court, this court must analyze the proper venue with respect to defendant Rothstein. Rothstein does not reside in Illinois and

11

none of the alleged events in this case occurred in Illinois.[13] Rothstein, however, can be "found" in Oregon under §1391(b)(3). Since he is the only defendant who can be "found" in the United States, venue is proper only in Oregon. Accordingly, Rothstein's motion to transfer pursuant to 28 U.S.C. §1406 is granted.

## CONCLUSION

For the reasons discussed above, defendants' Adams and Maynard's motion to dismiss is denied. Defendant Rothstein's motion to transfer for improper venue is granted. This case is transferred to the District of Oregon.

**ENTER: July, 8, 2005**

                                               **Robert W. Gettleman**
                                               **United States District Judge**

---

[13] It appears that Flag prefers to prosecute this case in Illinois because that is where it was originally sued by Mr. Repay and continues to litigate that suit in the Illinois state court.